TOWN OF COMO *v.* JAY H. POINTER ET AL.

[40 South. Rep., 260.]

1. DEED. *Construction by parties. Possession. Contemporaneous act.*

Where a vendor places his vendee in actual possession of a well-defined tract of land, the act being a contemporaneous construction of his deed, he will thereafter be precluded from availing of any ambiguity as to the extent of the tract to be found in the deed.

2. DEDICATION. *Right to private way. Necessity. Municipality.*

A municipality cannot claim a public way of necessity as analogous to the right of an individual to demand a way of necessity over lands of other persons.

3. SAME. *Evidence. Concrete case.*

The land involved herein not having been included in any plat authorized by the owner by which streets were dedicated or lots sold, and sale not having been made by the owner in reference to any map showing streets, and the public having been always shut out from the land by a fence, there was no dedication.

FROM the chancery court of Panola county.

HON. JULIAN C. WILSON, Chancellor.

The town of Como, the appellant, was the complainant in the court below; Pointer and others, the appellees, were defendants there. From a decree in favor of defendants the complainant appealed to the supreme court.

The case was heard on the pleadings and evidence, and the chancellor rendered a decree and filed an opinion, setting forth the facts of the case, as follows:

"In May, 1854, the land on which the town of Como is now located belonged to George G. Tait. He deeded one hundred feet through the place to the Mississippi & Tennessee Railroad Company for a right of way. This land is fifty feet in width each way, from the center of the track of the present Illinois Central Railroad, the successor of the Mississippi & Tennessee Railroad Com-

pany, which railroad runs north through the town, with a variation of ten degrees west, or south variation ten degrees east. Almost paralleling the track, immediately on the east, runs one of the principal streets of the town, and here ran the public road at or near the time of the original grant. In fact, nearly fifty feet of this street is on the land granted for a right of way. George G. Tait died before 1867, and his daughter, Sallie Pointer, became the owner of his lands, embracing what is now Como. Mrs. Pointer began in 1868 selling these lands for residence lots. In her deeds first made and up to the first location in controversy she never sold farther west than within seventy feet of the railroad track, and ran her lots north, parallel with such tracks, which was ten degrees west. She also referred in such deeds to a map of Owen Merriwether. Unfortunately, however, Merriwether's map and survey did not extend to the point in controversy, and throw no light on the questions in dispute. Mrs. Pointer and her husband continued to sell lots running northward, leaving a margin of seventy feet from the railroad track (as, in fact, the road then ran), until they reached in point of time the year 1870 and in point of land the place where there was an offset in the road or in the fence east of the road, and where, in fact, the road narrowed to about fifty feet, caused by the fence being set about twenty feet farther west. The road continued, so narrowed, past the lands of Mrs. Pointer. And this twenty feet so taken in by the fence is the cause of this litigation. When Mrs. Pointer sold this first lot now under discussion to one Bass—through whom it comes to defendant, Jay H. Pointer—she described it as beginning six chains, ninety links, northwardly from N. R. Sledge, Jr.'s northwest corner, running northwardly, parallel with the railroad. The description is satisfactory enough, if a starting point is found. Bass took possession of the land, then under Mrs. Pointer's fence—which included the twenty feet in dispute here—and his vendees have

been in possession by having it inclosed constantly until this time. Jay H. Pointer acquired this lot in 1879 under Bass.

"In 1880 the town of Como was incorporated, and the charter described the corporation line as being where Jay H. Pointer's 'northwest corner joins the railroad right of way,' or words to that effect. About 1882 Jay H. Pointer sold J. L. Cocke a strip eighty feet wide off the south end of his lot, which had theretofore been four hundred feet wide, from north to south. The eastern boundary in his deed to Cocke is, in effect, seventy feet east from the center of the railroad track, and, therefore, leaves out the twenty feet on the west side of the strip. Before that time the twenty feet immediately west of this eight-foot front lot of Cocke had become a part of the street by user—that is, it had never been fenced, but the offset was higher up, and at the southwest corner of Jay H. Pointer's lot, as remaining. The town at that time extended only as far north as the northern boundary of Jay H. Pointer's lot. Mrs. Sallie P. Butler, Mrs. Pointer's daughter, became the owner of her holdings in issue. Mrs. Butler and her husband, S. H. Butler, in 1893, sold a lot to Robert Ruffin, beginning at the northwest corner of the Pointer lot and running northwardly, parallel with the railroad. Ruffin took possession of the lands, as then under fence, and himself built a fence in the same place, so as to include the twenty-foot strip now claimed as the eastern side of the street. This happened also in the sales by Mrs. Butler and husband to defendants Wooten, Bethany, and Beall, the corporation having in the meantime been extended to include their lots. Bethany has an offset on the north end of his lot for convenience. A conversation, however, occurred between Mr. Butler, agent for his wife, and Messrs Beall and Bethany, that affects the lots of Wooten, Bethany, and Beall. Butler told them that they could buy only to within seventy feet of the railroad track, and that they might take possession of the twenty-foot strip, as the others had done, and fence it upon a similar arangement to theirs; but

if the railroad ever claimed its right of way west of their lots and closed the road by doing so, then said strip would have to be given up for a street, as it would then be necessary. Wooten, buying from Beall, was informed of this arrangement. The public has used this right of way, deeded originally to the railroad company, for forty or more years as a highway, and the railroad has shown no disposition to claim or close it as against this use. E. P. Coleman has purchased any remaining interest of Mrs. Butler. Valuable improvements, ornamental in their nature, have been made by the defendants on the land in controversy. In this state of facts the town of Como asks a mandatory injunction by original bill to open the twenty-foot strip as a street. Its claim is of dedication by Mrs. Sallie Pointer and Mrs. Sallie Butler. The answer denies the dedication, and the proof is as just given.

"Certain maps were offered in evidence to support the case of complainant, and ruling reserved upon their admissibility. These maps were made at the instance of the town, but were not shown to have been brought to the attention of the owners of the land, except that of Robert Ruffin, who copied one of them when employed so to do and to extend same by the town. The maps are admitted in evidence, and the objection to them overruled. The question for decision is whether or not the strip in controversy was dedicated to the public by Mrs. Pointer or Mrs. Butler. The maps would show a sufficient acceptance if the gift was ever made. No question of abandonment is raised. The court is unable to fix upon any act or statement by either Mrs. Pointer or Mrs. Butler by which a dedication either arises or is implied, nor can it fix any time when the dedication was made. It is true the street is seventy feet wide south of the point in controversy, and nearer the business part of town. Fifty feet of this was probably given by the railroad, the other twenty feet by either Mrs. Pointer or her father, and was thrown open to the public. But it is not contended that the upper part, then a

field, was dedicated simultaneously. While later it would have been a very symmetrical and desirable thing to have widened the street to the same width as indeed it is now, this is not sufficient to create a dedication or to show that one was made. The entire street, from the southernmost point in controversy north, was taken from or given by the railroad, and was never given by either Mrs. Pointer or Mrs. Butler. Conceding that the Pointer lot, as well as the other lots north, ran west to within only seventy feet of the railroad track, and that the deed so specified, and that Mrs. Pointer did not deed then, nor Mrs. Butler later, the twenty-foot strip, but kept it inclosed and permitted their vendees to occupy it, this surely is not giving it to the public. Manifestly, failing to sell it to them did not imply a gift to the public, nor would it be such gift because they had given a similar strip farther south at a previous time. Their generosity could stop when they saw fit. Nor need it be supposed to continue because the land was needed for street purposes. Neither of them made a plat, laid out a street, or sold lots with reference to one. There was no throwing open this strip to the public, nor long user by them, nor any user at all; on the contrary, the public was always shut out by the fence. The disposition of real property, by dedication or otherwise, is an important act in the eyes of the law, and acts susceptible of other construction, equally reasonable, and consistent with retention of ownership, will not by law serve to deprive an owner of property where no estoppel can be claimed. It is quite as consistent that these ladies intended to keep this property for themselves as that they gave it to the public. This, of course, is said quite independent of any claim of adverse possession or right of way, as between them and their vendees, or of any question of ways of necessity to the vendees. In these rights, as between their vendees and themselves, the public was not interested. The deed made by Jay H. Pointer to J. L. Cocke throws no light on a previous act of Mrs. Pointer. Pointer's acquiescence could not, of course,

make a previous dedication.   He likely made a distinct dedication of the small strip left open by him, but no more.   His giving eighty feet, if he gave it, would not justify a court in giving more.

"The evidence shows, however, that the fence has for forty or more years been where it is now; and, therefore, it would seem that this strip was already opened, rather than dedicated by Jay H. Pointer.   This eighty-foot strip is not in controversy now, but is in the possession of the public.   The court does not in this case attempt to decide, as between Jay H. Pointer and Mrs. Sallie Pointer, the effect of Bass and Pointer taking possession of the entire strip under a deed which the court believes to be void as to description.   But the court is of opinion that the evidence tends to show that Mrs. Sallie Pointer intended to reserve the fee in and to the twenty-foot strip west of the lots deeded by her, north of the Betts lot, evidently keeping it for street purposes when she should so wish to use it, and that the evidence fails to show that she or her heir ever consummated this purpose by so devoting the strip to that use.   She had a right to keep it or any other of her lands by simply not conveying or giving it.   She never conveyed the strip by valid description, and no act of gift, other than reservation, is shown.   The same conclusions apply to the more northern lots west of Wooten, Bethany, and Beall, with the further remark that Mrs. Butler's agent stated at the time of sale that this strip was reserved, as the others were, for street purposes, should the railroad close the street then existing and open; and upon that understanding possession was given.   No rule of law prevented such reservation.   One can keep one's land for such lawful purposes as one pleases.   And while these vendees may have a right to enforce a street at this point, the court fails to see how the town can do so, especially until the contingency provided for arises. . . .

"The court is of opinion that the complainant has failed in any way fixed by the law writers to show that Mrs. Sallie Pointer

or Mrs. Sallie Butler ever gave the twenty-foot strip to the public; and the showing of an intention to later make such a gift, never made, is insufficient to change the ownership of land. The bill will be dismissed."

*Lowrey & Lamb,* for appellant.

' We cite the following authorities: *Indianola Light, etc., Co.* v. *Montgomery,* 85 Miss., 304 (s.c., 37 South. Rep., 958); *Marion* v. *Skillman,* 26 N. E. Rep., 676 (11 L. R. A., 59); *McNail* v. *Hicks,* 34 La. Ann., 1090; *Lafayette* v. *Holland,* 18 La., 286; *City of Eau Claire* v. *Matze,* 39 Am. St. Rep., 900, and note; *Town of Burlington* v. *Schwarzman,* 52 Am. St. Rep., 571; *Webb* v. *City of Demopolis,* 13 South. Rep., 289; *City of Demopolis* v. *Webb,* 6 South. Rep., 408; *Briel* v. *Natchez,* 48 Miss., 423; *Vicksburg* v. *Marshall,* 59 Miss., 563.

*A. W. Shands,* for appellees.

We cite Elliott on Roads and Streets (2d ed.), sec. 124, and notes thereunder.

Argued orally by *P. H. Lowrey,* for appellant.

TRULY, J., delivered the opinion of the court.

The lucid and forceful opinion of the chancellor set out in this record is to our minds unanswerable that there was no dedication of the twenty-foot strip involved herein to the public as a street. This conclusion is irresistible in view of the fact that the land in question was never included in any plat prepared or authorized by the owners by which streets were dedicated or lots sold. The original map referred to, it is conceded, did not embrace the land here in question, and was prepared before there was any incorporation of the municipality.

It appears probable from the evidence in the record that at the date of the first sale of any of the lots—and certainly prior to the incorporation of the town, in 1880—there was a public

road traversing the land of appellees' vendors. To this extent, at least, it might well be conceded that there was a donation or grant of a road or thoroughfare to the extent of the actual occupation, even though the same had never been originally condemned or appropriated by the county authorities. The record is silent on this point. It is evident, though, for several reasons, that there was no dedication at that date of this strip as a street. There was no municipality to which the dedication could be made or by which the dedication could be accepted; there was no map prepared by the owners making a dedication; there was no sale by the owners of lots in this particular locality with reference to any map, by whomsoever prepared, showing a street of the width now claimed. These observations, in addition to the reasoning of the chancellor in his written opinion, confirm us in the conclusion that there was no legal dedication to the public or municipality of the strip involved.

An analysis of the description employed in the deed to Bass, as differing from the description employed in the deeds previously executed, when considered in connection with the clearly proven fact that the land conveyed to Bass was at the date of the conveyance under fence up to the road on the railroad right of way, together with the fact that the description employed in the Bass deed is applicable to the land of which he entered into possession, make it probable that the difference in the description in the deeds was made advisedly and with intention. Granting that, if the Bass deed was to be considered of itself, it might be avoided on account of the vagueness of the descriptive terms employed and the lack of certainty in stating a point of beginning, still, the fact that the record shows that Bass went into possession, with the knowledge and acquiescence of his vendor, of the land then under fence, including the strip in question, without any written or proven oral reservation of any interest by the vendor, is strongly persuasive that the description was intended to convey the land actually taken possession of. It is,

of course, firmly established that, where the vendor places his vendee in possession of land under certain boundaries or other descriptive terms, he will not afterwards be permitted to avail himself of any uncertainty or ambiguity in the terms employed. The contemporaneous construction by vendor and vendee evidenced by giving of possession will fix the true meaning and intent of the parties. It is plain to our minds, therefore, that Bass and his vendees are by lapse of time vested with a perfect title to the land in question.

Conceding the correctness of appellant's contention that there was no proper or legal proof of the conveyance of a right of way to the railroad company, this does not better its position. The proof shows that there was a road—whether public highway or not is not material—and that Bass did purchase land adjoining this road, and that he and his vendees have been in open, notorious possession, with the knowledge and consent of his vendor, for a long term of years. In addition to this, as well said by the chancellor, the private right of individuals to demand a way of necessity over lands of other individuals, even if such right exists, confers no right on a municipality to claim such way as a public street. We are aware of the great advantage and convenience which no doubt would result from having the street the same width throughout the municipality, but this court cannot legislate for the convenience of municipalities nor make contracts different from those entered into by the parties themselves. This furnishes simply another instance of the difficulties and inconveniences which may arise from changed conditions. Doubtless had the original owners dreamed, when the first plat of the then purely prospective town was made, of its future growth, the streets and squares would have been platted with greater regard to regularity in size and symmetry in shape and appearance. But no serious harm can result; for if the strip in question be demanded for the public use or convenience, the municipality has ample remedy provided by the law.

*Affirmed.*